The petition is therefore refused.

---

ST. LOUIS MERCHANTS' BRIDGE TERMINAL RY. CO. v. MUNGER.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5116.

CARRIERS ⬡348(3)—PASSENGERS—INJURY—INSTRUCTIONS.

    In an action by plaintiff, struck by defendant's engine at one of its passenger stations, after he had passed through the gates, which had been unlocked by the gateman, who announced plaintiff's train, etc., instructions on invitation to plaintiff to pass through gate, etc., *held* to correctly announce the law.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Carlton A. Munger against the St. Louis Merchants' Bridge Terminal Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

T. M. Pierce, of St. Louis, Mo. (J. L. Howell, of St. Louis, Mo., on the brief), for plaintiff in error.

Marion C. Early, of St. Louis, Mo. (Edward E. Campbell, of Louisiana, Mo., on the brief), for defendant in error.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. This case, on writ of error from judgment for damages because of personal injuries, is here for the second time. See 246 Fed. 938, 159 C. C. A. 210. The facts and pleadings necessary to understand the point now presented are as follows:

Munger was struck by a Terminal Company engine at one of its passenger stations. The waiting room of this station opened upon an inclosed space, separated from the tracks by a high iron fence, with sliding gates, which could be locked. These gates were in charge of a gateman, who controls the movement of passengers through them. Munger was one of a crowd of passengers in the inclosure waiting to take a train. Upon its approach the gateman announced the train, passed through the passengers in the inclosure, unlocked the south gate nearest Munger, went through, leaving that gate unlocked, and almost, if not entirely, closed, passed to the other gate 30 feet distant, which he unlocked, but did not open, turned, and stood watching the approaching train. The testimony does not show who afterwards opened the south gate, through which Munger passed, but it is evident that it could have been done only by some passenger other than Munger. Munger was struck, not far outside this gate, by a rapidly moving engine, while crossing an intervening track toward his train.

The petition relied upon several acts of negligence, all connected with the operation of this engine. The answer was a general denial, and a plea of contributory negligence "in attempting to cross the railroad tracks in front of, and in close proximity to, a moving locomotive."

The proposition of error here presented is that the court did not properly submit to the jury the matter of "invitation" to Munger by the company to pass through the gates, and therefore onto the tracks. This matter of invitation arises as bearing upon the legal status of the parties at the time of injury.

The company requested the court to charge as follows:

"The court instructs the jury that, if you find and believe from the evidence that the gate through which the plaintiff went onto the platform carrying the two tracks was open by some unauthorized person not in the employ of the defendant, St. Louis Merchants' Bridge Railway Company, and the plaintiff was thereafter injured by going onto the south-bound track so close to an approaching engine as to render a collision inevitable and unavoidable, your verdict must be for said defendant."

It also complains that the court—

"prominently left the decision of the case by the jury to the negligence alone of the engineer in charge of the engine, and in disregarding the issue tendered in the pleadings by the plaintiff, as to whether or not there was an invitation to pass through the gates onto the platform, and in disregarding the defense and denial of such invitation, and in utterly disregarding the plaintiff's fail-

ure to prove an invitation to pass through said gates, although pleaded in the petition."

Those parts of the given charge relating to the matter of invitation were as follows:

"The evidence here is that, about the time that train was due to arrive, an agent and servant of the defendant announced the train, and himself passed through the middle gate—two gates being in use, the south and the north gate; that he unlocked the gate, went through the gate, and out onto the platform in front of the gate. There is no controversy about that. He says that he latched the gate, but did not lock it. One witness says that he left the gate ajar, neither locking nor latching it. These are questions that you have to deal with; they are matters that concern you. He says that, after he walked out of that gate, he walked up the platform to the other gate and unlocked that. It need not be told you, nor anybody else who is an observer of things, that when the train came, and the opportunity seemed to be there presented for their reception upon that train, the people started. It is estimated that from 40 to 75 people were behind that gate when the train came. They started to go to take the train, as they were in the habit of going to that train, and, as I have said, a train that had been running there for years before this accident happened. Those are facts about which there is no controversy. * * *

"Something was said in the course of the argument, and in an instruction that I am asked to give you, about applying the rule that it was the duty of the passenger [this plaintiff] at that time to stop, listen, and look.

"The general principle of law is that one who goes to a railroad station, and purchases a ticket for a train due shortly afterwards, is entitled to the right of a passenger in crossing the track to board the train after it has been announced. A passenger who is required to cross a track on which a train is approaching, in order to board it, may rely on the invitation of the station agent to cross at a particular time as an assurance that it may be done in safety.

"It was the duty of the defendant to use care in seeing that passengers were not injured. If passengers go over, and it is known to the railroad company that they have to cross another track to get to the one on which the train stands, they have a right to assume that everything has been done to provide for their care, and under such circumstances the doctrine of 'stop, look, and listen' does not apply.

"I have stated this to you as clearly as I can. This plaintiff was there as a passenger. If that gate was unlocked and open, and the agent of the defendant announced the coming of the train, it is for you to say whether that was an invitation to this passenger, who was to board that train, that everything was safe."

We consider that the charge fairly presented to the jury the determination of whether the evidence showed an invitation to Munger to go through the gate. We are confident the evidence justified such a submission.

The judgment is affirmed.